UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States of America,<br><br>                              Plaintiff,<br><br>v.<br><br>Any and All Funds on Deposit at JPMorgan Chase Account Number 61442003 Held in the Name of CIA Minera Aurifera Santa Rosa SA, AKA COMARSA, et. al,<br><br>                              Defendants-in-Rem. | Civil Action No. 12-CV-7530 (GBD)<br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR EXPEDITED PRETRIAL STATUS CONFERENCE PURSUANT TO <u>RULE 16</u>** |

Claimant Compañía Minera Aurífera Santa Rosa S.A. ("COMARSA"), by and through its undersigned counsel, respectfully submits the following memorandum of law in support of its motion for a pretrial status conference at the earliest possible date, pursuant to Federal Rule of Civil Procedure 16. In support thereof, counsel submit the following:

1)     COMARSA is a Peruvian company that has been in the business of gold and silver mining since being organized in 1992. It presently employs over 2,500 people. COMARSA, like numerous Peruvian businesses, maintains its primary dollar-denominated bank account at Banco de Comercio in Lima, Peru. It has an additional account at JP Morgan Chase, though available records show that that account -- which was not an operating account for the business -- has been in "closed" status since at least January 2010.

2)     On September 7, 2012, the government sought and obtained an *ex parte* civil seizure warrant authorizing the immediate seizure of "all funds currently on deposit" in these two accounts, on the allegation that the accounts are somehow involved in an offense -- in this instance money laundering -- that allows for such a seizure. Thirty two days after obtaining its *ex parte* order, on October 9, 2012 the government filed the instant civil forfeiture complaint. On November 5, 2012, the government voluntarily dismissed the complaint against the bank

accounts of Republic Metals.  <u>See</u> Stipulation and Order of Settlement (Doc. No. 8).  On December 3, 2012, the government similarly moved to dismiss against the accounts of Italpreziosi SpA, a COMARSA customer.  <u>See</u> Stipulation and Order of Dismissal (Doc. No. 14).  Today, pursuant to the schedule agreed upon by the parties, COMARSA has filed a claim as to both of its accounts that are defendants *in rem* in this action.

        3)      COMARSA intends to vigorously dispute the allegations in the complaint.  The complaint sets forth no theory as to how the particular seized funds are the proceeds of money laundering or any other offense.  The only alleged money transfers involving COMARSA were from Italpreziosi SpA, as to which a stipulation of dismissal is in place, and the most recent transaction between COMARSA and Italpreziosi SpA was specifically reviewed and approved in writing by the United States (<u>See</u> Exhibit 1 to Declaration of Abbe David Lowell), on the basis of the same documentation that COMARSA has already provided to the government in regards to the transactions from the 2008-2010 period alleged in the complaint.  The mere existence of the civil complaint, however, threatens COMARSA's existence while it litigates to clear its name.  Out of fear that the U.S. Department of Justice will take action against them on the basis of the allegations against COMARSA, COMARSA's various vendors/suppliers in Peru and elsewhere, and its principal customer in Italy, have become reluctant to do business with COMARSA absent assurances from the U.S. government that it will not take action against them.  Indeed, at least one of COMARSA's suppliers has already announced that it will no longer do business with the company as a result of the complaint.  Although on October 30, 2012, as stated above, the government agreed -- after receiving documents from COMARSA and its counterparty -- to forbear from interfering with a gold transaction that was pending at the time the seizure warrants were executed, since that time the government has affirmatively warned

COMARSA that future sales of precious metals by COMARSA would occur at COMARSA's own risk.

4) Accordingly, COMARSA asks this Court to schedule a pretrial conference on an expedited basis so that a structure for this litigation can be established to allow COMARSA to protect its interests from being collaterally damaged by the government's misplaced allegations. This is particularly important since COMARSA is not the defendant in this action. The government has brought an action *in rem* against two COMARSA bank accounts. COMARSA should not have to risk losing its ability to do its legitimate mining business in order to get back property that the government seized *ex parte* and for which any proceedings will show there was no basis to seize in the first place.

5) Federal Rule of Civil Procedure 16(a) permits this Court to direct the parties to appear for a pretrial conference at any time and for a number of different purposes. Rule 16(a)(1) establishes that such a conference is appropriate for the purpose of "expediting disposition of the action." Rule 16(c)(2)(p) further directs that at such a conference, the Court may properly consider facilitating ways to ensure the "just, speedy, and inexpensive disposition of the action." Counsel may request the Court to conduct such conferences whenever they may be helpful. See generally 3 Moore's Federal Practice §16.60[3][b] (Matthew Bender, 3d Ed.) Given the damage that the mere existence of the complaint has caused, and will continue to cause, to the claimant's business, the need for a conference at this time to address these purposes is paramount. In this fashion, the conference could also avoid more initial litigation in the nature of motions for preliminary relief.

6) The nature of this complaint brings COMARSA's need into even starker relief. To begin, there are preliminary legal issues the Court might want to consider. COMARSA is a

3

business located in Peru, operated by Peruvians. It is not located in the United States. Since approximately November 2008, its sole customer has been located in Italy. The complaint contains only the most generic of allegations to establish that there is venue and jurisdiction *in rem* over this action in the Southern District of New York. See Complaint at ¶¶ 3, 24. Indeed, it is hard to discern from the complaint why there would be jurisdiction *in rem* or venue over COMARSA's financial transactions with an Italian counterparty and a Peruvian bank in any U.S. court. Remarkably, the complaint does not contain a single allegation that any particular financial transaction involved the proceeds of a crime (or one which would support a freeze on a money laundering basis) -- let alone an allegation that such a transaction meaningfully took place in the Southern District of New York. And yet the Department of Justice affirmatively warns COMARSA that another sale of precious metal by COMARSA to Italpreziosi SpA, equal in all material respects to the one the Department of Justice has just recently approved between COMARSA and Italpreziosi SpA, would occur at COMARSA's risk.

6)  Moreover, the litigation will reveal serious problems with the government's complaint, a complaint that grossly distorts the facts and contains substantial material omissions. As the Court is aware, the government has already agreed to dismiss the complaint against two other claimants -- despite the fact that just three months ago a DEA Special Agent swore under oath that there was probable cause to seize these claimants' accounts. See Stipulation and Order of Settlement (Doc. No. 8) and Stipulation and Order of Dismissal (Doc. No. 14). One of these parties (Italpreziosi SpA.) was COMARSA's customer, and the theory of liability was based on the same conduct that ostensibly supports a claim against the COMARSA accounts.

7)  There are substantial, easily demonstrable distortions in the complaint. Among the most blatant, the complaint relies over and over on the existence of Peruvian "investigations"

4

to suggest that COMARSA is involved in illegal activity. The complaint omits, however, that these investigations were personally launched by Peru's former president on national television in a political/commercial context, or that each of these investigations was concluded with a finding by the line Peruvian prosecutors that there was no basis for criminal charges. For example, the complaint includes an allegation that, in 2007, Peruvian authorities determined that COMARSA used an excessive amount of calcium oxide at its mine -- suggesting that COMARSA must be manufacturing cocaine, not mining for gold. See Complaint at ¶ 19. But readily available official Peruvian documents show that authorities in that country rejected this allegation on at least two separate occasions (2009 and 2010) based on analyses conducted by publicly appointed experts. For instance, a panel of metallurgical experts commissioned by the government of Peru reached the same conclusion -- there was no improper use of calcium oxide. The complaint mentions the investigations. It misstates the expert evidence and omits the conclusions. Presumably the seizure warrant did the same[1].

    8) In addition, COMARSA has provided the government with a petition it filed in the Inter-American Commission on Human Rights of the Organization of American States that demonstrates the investigations of it in Peru, on which the U.S. Attorney's Office is piggybacking, were personally ordered on television by Peru's former president in the midst of a commercial dispute in which his Minister of Justice had acted as counsel adverse to COMARSA and that the Peruvian justice system was improperly manipulated to create this inquiry against

---

[1] COMARSA has requested for weeks a copy of the seizure affidavit. The government has indicated that it is getting it unsealed but has not explained why it is taking so long for it to do so.

the company and those associated with it.  Giving no hint of the extraordinary circumstances that produced the Peru investigations, or the fact that they were closed without any indictment on any charges referred to trial, this complaint threatens to end the lifelihoods of more than 2,500 Peruvian families whose members are employed by COMARSA.

9)     In addition to harming COMARSA's employees and their families, the actions of the U.S. Attorney's Office, including its widely-distributed press release, its erroneous allegations, and its missing theory of money laundering, have caused serious damage to the business and reputations of the companies implicated by its complaint, including COMARSA and its management.  COMARSA looks forward to answering each and every allegation, showing the errors of the U.S. Attorney, demonstrating the lack of basis for this action to have been brought, and quantifying the damage the U.S. Attorney has caused.  But it respectfully requests that a expedited pretrial status conference be held as soon as possible so that it may begin the process of contesting the complaint without undue delay and seek a means to ensure that its business is not unduly damaged in the process.

Dated: December 7, 2012         Respectfully submitted,

/s/ Abbe David Lowell
Abbe David Lowell
NY Bar No.: 2981744
SDNY Reg. No.: AL2981
ADLowell@Chadbourne.com
CHADBOURNE & PARKE LLP
1200 New Hampshire Ave., NW
Washington, DC 20036
(202) 974-5600 (phone)
(202) 974-5602 (fax)

*Attorneys for Claimant CIA Minera Aurifera Santa Rosa SA.*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on December 7, 2012, I caused a true and correct copy of the Memorandum of Law in Support of the Motion for Expedited Pretrial Status Conference to be served via the CM/ECF system upon Preet Bharara, United States Attorney for the Southern District of New York, Sarah E. Paul, Assistant United States Attorney, and Paul Monteleoni, Assistant United States Attorney.

/s/ Abbe David Lowell
Abbe David Lowell