UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

           Plaintiff,

-against-

Any and All Funds on deposit at JPMorgan Chase Account Number 31442003 held in the Name of Cia Minera Aurifera Santa Rosa SA, aka COMARSA et al.

           Defendants-in-Rem,

-and-

CIA Minera Aurifera Santa Rosa SA,

           Claimant.



MEMORANDUM DECISION
AND ORDER

12 Civ. 7530 (GBD)

GEORGE B. DANIELS, United States District Judge:

The Government commenced this action seeking the forfeiture of any and all funds on deposit at JPMorgan Chase Account Number 61442003, held in the name of CIA Minera Aurifera Santa Rosa SA, a/k/a COMARSA pursuant to Title 18, United States Code, Section 981(a)(1)(A) and Title 21, United States Code, Section 881(a)(6). The Government alleges that members of the extended Sanchez-Paredes family, who own the mining company COMARSA, were engaged in narcotics trafficking both in Peru and on an international level, and used the company to launder drug proceeds by commingling drug proceeds into the business operations of the company.

1

On April 12, 2013, the Government moved to dismiss the complaint against the COMARSA account without prejudice. COMARSA cross moved to dismiss with prejudice and sought attorney's fees and sanctions pursuant to Rule 11. The Government's motion to dismiss without prejudice is GRANTED. COMARSA's motion to dismiss with prejudice is DENIED.

## FACTS

The Government obtained seizure warrants against two of COMARSA's bank accounts—one in the United States and one in Peru—on September 7, 2012. Memorandum of Law of the United States of America in Further Support of Motion for Voluntary Dismissal Without Prejudice ("Further Supp."), May 7, 2013 (ECF No. 69) at 2. The funds in COMARSA's United States account were subsequently seized, and following a formal request ("MLAT request") to Peru under the Inter-American Convention on Mutual Assistance in Criminal Matters ("Convention"), the funds in COMARSA's Peruvian account were frozen.[1] *Id.* The Government then filed its initial forfeiture Complaint on October 9, 2012 (ECF No. 1) based largely on the same probable cause set forth in the affidavit it submitted to obtain the original seizure warrant. *Id.* After filing the complaint, the Government issued a press release summarizing the allegations in the complaint and reporting the amount of money that had been seized. *Id.* During a status conference on January 4, 2013, the Government represented to this Court that it intended to rely on certain documents from Peru to support its allegations. *Id.* at 3. On February 5, 2013, the Government submitted a supplemental MLAT request to Peru seeking access to the record of the Money Laundering Investigation and permission for United States

---

[1] COMARSA appealed the granting of this request to the Sala Penal Nacional on October 10, 2012 on the grounds that because the Government was seeking assistance in a civil case, the Convention does not apply. In response, the Sala Penal Nacional asked for clarification on the nature of this case.

2

agents and prosecutors to meet with Peruvian prosecutors.[2] Id. at 4. The Government filed an amended complaint on February 4, 2013, which indicated the dismissal of claims against other funds held in the name of certain other claimants, narrowed and clarified the Government's theories of forfeiture, and largely realleged the Government's original claims against the COMARSA funds. Id. at 5.

The Government sought dismissal of its complaint against the United States COMARSA account without prejudice on April 12, 2013 after it was informed that, pursuant to the applicable mutual legal assistance treaty, Peruvian authorities would not grant the Government access to critical evidence in Peru until the conclusion of relevant criminal proceedings there. Letter from P. Monteleoni to Hon. George B. Daniels, Apr. 12, 2013. According to the Government, this information came from (1) the March 27, 2013 Peruvian court decision stating that "authorities of Peru do not have the power to authorize or refuse investigative work meetings between Peruvian Prosecutors and their counterparts of a foreign country" and (2) communications between the Government of Peru and Department of Justice's Office of International Affairs indicating that "as a practical matter, the Government of Peru would not act on the Supplemental MLAT until the conclusion of the Peruvian criminal proceedings." Further Supp. at 6-7.

In its motion to dismiss with prejudice, COMARSA alleges that the Government knowingly filed the Supplemental MLAT in the wrong court. COMARSA argues that the Peruvian judge that received the request lacked jurisdiction to approve of the Supplemental MLAT and instructed the Government to send the request to the Sala Penal Nacional, which houses the Money Laundering Investigation records. Despite that information, the Government

---

[2] COMARSA claims that the Government "filed" the supplemental MLAT request on March 1, 2013. COMARSA Opp. at 13. The Government clarifies that it sent the request by Federal Express on February 5, 2013 and "is not able to control when Peruvian authorities 'file' it." Further Supp. at 4.

refiled the Supplemental MLAT on March 27, 2013 in the same court and a different judge ruled that he lacked jurisdiction to approve the request. COMARSA Opp. at 14.

## I. THE MOTION TO DISMISS IS GRANTED WITHOUT PREJUDICE

Rule 41(a)(2) provides that, except where all parties agree to a stipulation of dismissal, "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." Fed. R. Civ. P. 41(a)(2). Voluntary dismissal without prejudice is thus not a matter of right. Factors relevant to the consideration of a motion to dismiss without prejudice include: "'[1] the plaintiff's diligence in bringing the motion; [2] any 'undue vexatiousness' on plaintiff's part; [3] the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial; [4] the duplicative expense of relitigation; and [5] the adequacy of plaintiff's explanation for the need to dismiss.'" *Catanzano v. Wing*, 277 F.3d 99, 110 (2d Cir. 2001) (quoting *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990)). "The Court will analyze each of these factors individually, but no one factor is dispositive. The crucial inquiry remains whether [the defendant] will suffer substantial prejudice as a result of a dismissal without prejudice." *Am. Fed'n of State, Cnty. & Mun. Employees Dist. Council 37 Health & Sec. Plan v. Pfizer, Inc.*, 12 Civ. 2237 JPO, 2013 WL 2391713 (S.D.N.Y. June 3, 2013) reconsideration denied, 12 CIV. 2237 JPO, 2013 WL 3328219 (S.D.N.Y. July 2, 2013)(quoting *Sec. Exch. Comm. v. Chakrapani*, Nos. 9 Civ. 325, 9 Civ. 1043, 2010 WL 2605819, at *2 (S.D.N.Y. June 29, 2010)).

The factors above weigh in favor of dismissal without prejudice in this case. First, with respect to the Government's diligence, the duration of litigation alone is not dispositive of diligence. *See Shaw Family Archives, Ltd. v. CMG Worldwide, Inc.*, No. 05 Civ. 3939 (CM), 2008 WL 4127549, at *6 (S.D.N.Y. Sept.2, 2008). Rather, "[a] better measure of diligence is

4

whether a plaintiff moved to dismiss the complaint without prejudice within a reasonable period of time after the occurrence of the event that led to the plaintiff's decision not to pursue the action." *Ascentive, LLC v. Opinion Corp.*, 10 Civ. 4433, 2012 WL 1569573 (E.D.N.Y. May 3, 2012). Here, the Government learned from the Peruvian authorities that it could not have access to the evidence located in Peru on April 2, 2013 and moved to dismiss on April 12, 2013. Because the Government sought to dismiss within two weeks of learning from the Peruvian authorities that it would not be granted access to the evidence requested, the Government was diligent in bringing this motion. *See, e.g., Shaw,* 2008 WL 4127549, at *6.

None of Claimant's arguments with respect to the Government's purported lack of diligence are persuasive. First, the Government's refusal to dismiss the claims against COMARSA's funds at the same time it dismissed claims against the funds of other claimants[3] does not indicate a lack of diligence. The Government is entitled to proceed differently with respect to different claimants' funds and with respect to the evidence related to the source and ownership of funds in different accounts. Second, as this case had been ongoing for only seven months as of April 2013, the requests during that period for more discovery time do not demonstrate a lack of diligence. Finally, the Government's explanations for the timing and requests to the Peruvian courts are reasonable. The Government did not act unreasonably in submitting its supplemental MLAT request to the Peruvian courts given the enforcement of the initial MLAT request. Furthermore, the Convention could be read to allow Peru to render assistance to the United States in a civil matter pertaining to criminal conduct. *See* Convention, ch. I, art. 2. Thus, the

---

[3] The Republic Claimants stipulated to the dismissal of the complaint as to the funds in the Republic Account with prejudice on November 5, 2012 (ECF No. 8). The Italpreziosi claimants initially stipulated to the dismissal of the complaint as to the funds in the Italpreziosi accounts without prejudice on 12/3/12 (ECF No. 14) and ultimately dismissed with prejudice on February 1, 2013 after the Government decided not to file an amended complaint against the Italpreziosi accounts (ECF No. 34). The San Simon Claimants stipulated to the dismissal of the complaint with prejudice as to the funds in the San Simon Accounts on March 28, 2013. (ECF No. 60).

5

Government was not obligated to move to dismiss in light of the Peruvian court's inquiry about the nature of the action.

Second, the Government's actions are not vexatious. "Vexatiousness is usually used to describe situations where the case was brought to harass the defendant or the plaintiff otherwise illustrates an ill-motive." *Am. Fed'n of State, Cnty. & Mun. Employees Dist. Council 37 Health & Sec. Plan v. Pfizer, Inc.*, 12 Civ. 2237 JPO, 2013 WL 2391713 (S.D.N.Y. June 3, 2013)(internal quotations and citations omitted). Courts find ill-motive where "the plaintiff never had any intention of providing discovery in th[e] case but nonetheless permitted the case to proceed, thereby seeking the advantage of filing its charges without having to support them; or where the plaintiff filed duplicative actions relating to the same injury; or where the plaintiff assured the court it would proceed with its claims but then go[es] back on their word and seeks dismissal." *Banco Cent. De Paraguay v. Paraguay Humanitarian Found., Inc.*, 01 Civ. 9649 (JFK), 2006 WL 3456521, at *5 (S.D.N.Y. Nov. 30, 2006) (internal quotations and citations omitted)).

Here, the Government has not been vexatious. First, COMARSA's claim that the Government "had no witnesses with first-hand knowledge of the allegations in the complaint and no documents of its own to substantiate its claims," (COMARSA Opp. at 18) is belied by the confidential sources cited in the Amended Complaint. While this information is not admissible as evidence, the Government properly relied on it in obtaining seizure warrants and filing a forfeiture complaint. Second, the Government was not vexatious in settling with other claimants but not with COMARSA. The record reflects that different claimants in this case were situated differently. Third, the Government did not act in bad faith in issuing its press release, which it contends was not a media campaign designed to harass COMARSA but rather an informational

6

statement of charges filed. Finally, while Claimant alleges the Government assured the Court that it intended to pursue their claims prior to seeking a dismissal, Claimant does not claim that the Government never had such an intention. Further Supp. at 14. The Government's decision to dismiss the case upon learning that it would not have access to the Peruvian evidence does not represent ill motive or contradict any assurances previously made by the Government.

Third, this action has not progressed substantially and any relitigation expenses are not likely to be duplicative or result in substantial prejudice to Claimant. At the time the Government sought to dismiss without prejudice, the case had been ongoing for only seven months, discovery was not complete and no depositions had been taken. Claimant alleges over the course of the last seven months, "hundreds of thousands of dollars have been spent defending this case" and the litigation has cost COMARSA millions of dollars in lost business opportunities. COMARSA Opp. at 22. While this may be true, the Court must consider what the duplicative expense would be if the Government were to refile, not what has been spent to date. If the Government refiles, the expense of litigation will not be duplicative. Either COMARSA can reuse most, if not all, of the preparation undertaken in the current litigation in a subsequent proceeding or, most likely the claim would be for a different fund and thus, discovery would not be duplicative.

Finally, the Government's justification for the need to dismiss the motion without prejudice is adequate. As the Government notes, the permission of Peruvian authorities is necessary for the Government to obtain critical evidence in this case. While the Government may be able to obtain evidence from other sources, it is nonetheless entitled to gather relevant evidence from the Peruvian files, which it believes is necessary to litigate this case. Furthermore, while the Government could waive law enforcement privilege as to some of its

7

confidential sources, its determination that doing so would not be responsible given witness safety issues implicated in this case is a reasonable one. The explanation provided by the Government is adequate and the time frame in which it moved to dismiss without prejudice is reasonable. Once the Government heard from the Peruvian authorities that it would be unable to access the documents on April 2, the Government knew it could not proceed with the case and promptly filed this motion.

## II. CLAIMANT IS NOT ENTITLED TO ATTORNEY'S FEES

### A. Claimant is Not Entitled to Attorney's Fees Under CAFRA

Claimant argues that as the prevailing party, they are entitled to attorney's fees under CAFRA. However, attorney's fees and other litigation costs may be awarded under CAFRA only if a claimant "substantially prevails." 28 U.S.C. § 2465(b)(1). The Supreme Court's decision in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001) informs the Second Circuit's understanding of the term "substantially prevails" in CAFRA. *United States v. Khan*, 497 F.3d 204, 209 n.7 (2d Cir. 2007). In *Buckhannon*, the Court held that in order to be considered a prevailing party for purposes of a federal fee shifting statute, a party must "secure judgment on the merits or a court-ordered consent decree." 532 U.S. at 600. Furthermore, "a defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." 532 U.S. at 605. Thus, while a voluntary change in one party's conduct might effectively result in the other party receiving the relief it sought in the suit, the term "prevailing party" as used by Congress requires a "judicially sanctioned change in the legal relationship of the parties." 532 U.S. at 605. Numerous courts have ruled in the CAFRA context that where a court "dismisses the proceeding without prejudice pursuant to the

8

Government's motion, the dismissal does not render the claimant a 'substantially prevailing' party entitled to attorney fees." *United States v. 115-98 Park Lane South et al*. 2012 WL 3861221 (E.D.N.Y. Sept. 5, 2012). A dismissal without prejudice merely "return[s] the parties to the *status quo ante* and [does] not materially alter their legal relationship." *United States v. $13,275.21, More or Less, in United States Currency*, No. SA-06-CA-171-XR, 2007 WL 316455, at *4 (W.D. Tex. Jan.31, 2007).

Here, the Government's voluntary dismissal of the complaint, although it results in the unfreezing of Claimant's funds, does not result in a judicially sanctioned change in the legal relationship of the parties. Because this Court has not adjudicated on the merits of this dispute, Claimant cannot be considered to have substantially prevailed. Accordingly, Claimant is not entitled to attorney's fees under CAFRA.

### B. Attorney's Fees are Not Appropriate Under Rule 11

Claimant argues that they are entitled to attorney's fees under Rule 11 on the bases that the Government proceeded with its warrant request and complaint without any first-hand evidence; magnified the harm it created with a press effort; failed to provide documents on which it based its actions; informed the Court that the Sanchez Paredes family were drug-traffickers and money launderers and then dismissed companies of that family after motions to dismiss were filed; delayed discovery; misstated that it has to have a dismissal to obtain documents and other information it does not need to have; made incorrect requests for information and then used its mistakes as grounds to seek further delay; and misstated to the Court the status of the proceedings in Peru to ask for its relief. COMARSA Opp. at 28-29. "Rule 11 sanctions are an extraordinary remedy and a movant must therefore meet a 'high bar' before sanctions are imposed on an adversary." *Gortat v. Capala Bros., Inc.*, 07-CV-3629 (ILG),

9

2008 WL 5273960, at *2 (E.D.N.Y. Dec. 18, 2008) (quoting *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 178-79 (S.D.N.Y. 2008)). The Government's actions do not warrant sanctions under Rule 11. First, the lack of first-hand evidence at the time the Government filed its complaint does not merit sanctions. As Section 983(a)(3)(D) provides, "[n]o complaint may be dismissed on the grounds that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D). Second, the Government's issuance of press releases is not a basis for sanctions under Rule 11. Furthermore, as discussed above, the Government's stipulations of dismissal of its claims against certain other accounts does not warrant Rule 11 sanctions with respect to its approach against COMARSA. Finally, the Government's actions with respect to discovery in this case do not merit Rule 11 sanctions.

### C. Attorney's Fees are Not Appropriate Under Rule 41

Claimant argues that they are equitably entitled to attorney's fees under Rule 41(a)(2) to offset the fees and costs associated with the possible duplication of dealing with a second action, especially given the Government's indication that it will seek to bring some new case in the future. Such an argument is based on speculation that there might be a future second action. Moreover, this litigation has not progressed significantly and the Government sought leave to dismiss within a reasonable time after learning that it could not gain access to evidence it needs to prove its case. The equities in this case do not weigh in favor of a discretionary award of attorneys' fees at this time in this action under Rule 41(a)(2).

10

## CONCLUSION

The Government's letter motion to dismiss without prejudice is GRANTED. Claimant's motion to dismiss with prejudice (ECF 65) is DENIED.[i]

Dated: October 1, 2013
   New York, New York

SO ORDERED

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge

---

[i] The September 7, 2012 seizure order of this Court is revoked and the funds are ordered released pursuant to this dismissal.

11